IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11cv352

| | |
|---|---|
| DAWN SMITH WHITLOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM |
| ) | OF DECISION AND |
| TAHITIANA A. CHAFFIN, *et al.*, ) | ORDER |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the court on defendants Tahitiana A. Chaffin's, Jeffrey Weatherman's, and the Town of Stallings's Motion for Partial Summary Judgment (#16). Having carefully considered the motions, the memoranda of law, and evidentiary materials submitted, and having conducted a hearing, the court enters the following findings, conclusions, and Order denying defendants' motion and setting this matter for trial.

**FINDINGS AND CONCLUSIONS**

**I.     Nature of the Action**

Plaintiff seeks money damages for injuries sustained when police officers arrested her outside of her home. She was convicted in the Union County, North Carolina District Court of resist, delay, or obstructing an officer, but was found not guilty of resisting arrest and is appealing the conviction to the Union County Superior Court.[1] She brings the instant claims pursuant to state tort law and federal law, including 42 U.S.C. §§ 1983 and 1988. She also claims that her Fourth and Fourteenth Amendment rights were violated

---

[1] Plaintiff asserts that she filed a speedy trial motion on or about September 13, 2011, and that the matter has not yet been calendared. Memorandum in Opp, p. 2.

based on an unlawful search and seizure, loss of liberty, and pain and suffering.

## II. Factual Background

### A. Plaintiff's Arrest

On July 27, 2008, Officer Tahitiana Chaffin (formerly known as Tahitiana Munoz) and Officer Jeffrey Weatherman of the Stallings Police Department responded twice to complaints at plaintiff's residence. The patrol vehicle has an in-car camera and microphone, which were both operating that night. Trial Tr., p. 39. At approximately 7:38 p.m., id., p. 8, the officers arrived to address complaints about the neighbor's dog being on plaintiff's property. Id., p. 6. Plaintiff told the officers that the dog escaped a fence and killed her dog a couple of months before and was dissatisfied with the lack of response from Animal Control up to that point. Id., p. 7. Plaintiff believed that the dog was getting into her trash can and spreading garbage throughout the yard, id., p. 23, and also said that she would shoot the dog if it returned to her yard, id., p. 8. Officer Chaffin observed plaintiff's prescription medications amongst the trash in the yard, id., p. 27, and noted that the dog was not aggressive toward the officers, id., p. 9.

Around 10 p.m. that night, the officers again responded to the house based on a call made by plaintiff's next-door neighbor, Trial Tr., p. 9. The neighbor had reported that plaintiff's then-boyfriend, James Thomas Polk, III, had pointed a gun at him, id., pp. 31-32. Officer Chaffin was unable to listen to the neighbor due to plaintiff's constant interruptions, despite the Officer's requests that plaintiff be quiet. Id., p. 11. Plaintiff started walking toward her house, presumably to find her boyfriend, and was "shouting and screaming something." Id. The neighbor's wife allegedly began yelling toward plaintiff and the two argued. Complaint, p. 3. According to Officer Chaffin, plaintiff was "instigating the neighbors" and used foul language to agitate them. Id. Officer

Weatherman shouted: "All right, shut up. Go get your boyfriend and bring him here or I'm going to start locking all of y'all up. Go do what the officer says. Go do what the officer says." Id.

Plaintiff told Officer Weatherman to "go to hell" and was repeatedly ordered by the officers to comply with their orders. Trial Tr., p. 32. Officer Weatherman ran toward plaintiff and pulled out his handcuffs to arrest her. Id., pp. 18-19. Plaintiff resisted by "[p]ushing, shoving, [and] pulling" Officer Weatherman. Officer Chaffin attempted to grab plaintiff's hands, although plaintiff stiffened her hands and resisted and a short struggle ensued. Id., pp. 19, 42. At one point, Officer Weatherman was laying on top of plaintiff and Officer Chaffin to restrain plaintiff. Id., p. 43.

Plaintiff complained that she was in pain, and that she recently had back surgery, Trial Tr., p. 51; Complaint, p. 4, and was eventually arrested in her yard and placed in the patrol car, where she was charged with resist, delay, or obstruction and resisting arrest. Complaint, p. 4; Trial Tr., pp. 34, 46. Plaintiff had a nerve stimulation unit surgically implanted in her back, and claims that the unit was damaged during the arrest, requiring her to have the unit replaced. Complaint, p. 4. The patrol vehicle video shows that plaintiff appears to walk normally following her arrest.

At some point, but not visible on the police recording, the officers could see Polk through the open blinds inside the house, holding a gun and "jumping in and out, jumping inside the house, hopping around." Trial Tr., p. 20. Polk then pointed the gun at the officers. Id., p. 21. Officer Weatherman verbally ordered Polk to drop the gun and the officers raised their weapons. Id. Polk was arrested without further incident. Id., p. 22.

Following a bench trial in Union County, North Carolina, on or about February 23, 2009, plaintiff was convicted of resist, delay, or obstructing a police officer. Trial Tr., p.

71. Plaintiff was found not guilty of disorderly conduct.  Id.  Approximately five officers from the Town of Stallings were present in the courtroom, and plaintiff hired a court reporter to transcribe the trial.[2]  Memo. in Opp., pp. 9, 10.  As set forth above, Plaintiff appealed the guilty finding and the matter is still pending.

### B. Hiring Process for Town of Stallings Police Officers

Larke Plyler was the Chief of Police of the Town of Stallings at the time of plaintiff's arrest but retired on July 31, 2010.  By Declaration, he states that Officers Chaffin and Weatherman were both lateral hires, passed pre-employment background investigations conducted by the Chief's command staff, and had completed Basic Law Enforcement Training Program.  Plyler Decl., p. 2.  The staff reported that both candidates had "good performance records and were recommended by their former agencies," and that Chief Plyler personally interviewed the candidates prior to hiring them.  Id.  Chief Plyler stated that both Officers "satisfactorily performed their duties and interacted with the public in a professional manner."  Id., p. 3.  Prior to the plaintiff's arrest, neither officer had been accused of excessive force or false arrest.  Id.  With respect to using force, the Chief said that there was no internal policy or custom which permitted Stallings officers to use "excessive force, unlawful searches or seizures, or the provision of constitutionally inadequate training and supervision."  Id.

## III. Causes of Action Asserted

Plaintiff asserts the following claims for relief under federal and state law:

(1) **First Claim for Relief**.  A Section 1983 claim for violation of plaintiff's constitutional rights under color of law, asserted against Officers Chaffin

---

[2]In a letter dated August 12, 2008, plaintiff's counsel notified the officers of plaintiff's intent to sue based upon her arrest.  See Smith Decl., p. 2.

and Weatherman;

(2) **Second Claim for Relief**. An assault and battery claim against all defendants, including the Town, pursuant to the doctrine of *respondeat superior*;

(3) **Third Claim for Relief**. A claim of false arrest and illegal imprisonment against all defendants, including the Town, pursuant to the doctrine of *respondeat superior*;

(4) **Fourth Claim for Relief**. A Section 1983 claim against the Town, in which plaintiff alleges that defendant "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Stallings," Complaint, at ¶ 57, and that it was the Town's policy and/or custom to "inadequately supervise and train its police officers," id., at ¶ 59.

(5) **Fifth Claim for Relief**. A claim against the Town for negligent hiring, supervision, and retention, in which plaintiff contends that the Town breached its "duty to exercise ordinary and reasonable care in the screening, hiring, training, retention, supervision, and discipline of its police officers," id., at ¶ 64, 65, and that the breach led to plaintiff's damages, id., at ¶ 67.

(6) **Sixth Claim for Relief**. A claim for punitive damages, in an amount exceeding $10,000.00, as to all defendants, based on N.C. Gen. Stat. § 1D *et seq*. Id., at ¶ 72.

IV. **Defendants' Motion for Partial Summary Judgment**

All defendants have moved for summary judgment with respect to plaintiff's third claim for relief from false arrest and imprisonment, and as to the false arrest

component set forth in plaintiff's first claim for Section 1983 relief against the officers. Motion., p. 1. Defendant Town of Stallings also moves for summary judgment as to plaintiff's fourth and fifth claims for relief based upon Section 1983 and the Town's allegedly negligent hiring, supervision, and retention claim. Id.

## V. Applicable Law

### A. Summary Judgment Standard

Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> **(3) Materials Not Cited.** The court need

> consider only the cited materials, but it may consider other materials in the record.
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id., at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must

credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

## VI. Impact of Heck v. Humphrey

None of the parties briefed the court in writing with respect to the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994), which discusses the interplay between a state and/or federal conviction and Section 1983, which held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has

already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id., at 486-487(footnotes omitted; emphasis added). Heck also includes the following footnote:

> An example of this latter category-a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful-would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. (This is a common definition of that offense. See *People v. Peacock,* 68 N.Y.2d 675, 505 N.Y.S.2d 594, 496 N.E.2d 683 (1986); 4 C. Torcia, Wharton's Criminal Law § 593, p. 307 (14th ed. 1981).) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. <u>In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, see n. 2, *supra,* the § 1983 action will not lie.</u>

Heck, 515 U.S. at 487, f.n. 6 (emphasis added). A Section 1983 claim may be dismissed without prejudice where a judgment in favor of the plaintiff would necessarily imply invalidity of the underlying conviction, because it amounts to an unexhausted habeas corpus claim and is not cognizable under Section 1983. Ballenger v. Owens, 352 F.3d 842, 847 (4th Cir. 2003) (holding post-conviction proceedings against state and state trooper for unreasonable search and seizure were barred by Heck where plaintiff was convicted of cocaine trafficking). See also Bishop and State of North Carolina, ex rel., v. County of Macon, et al., 11-2021 (4th Cir. 2012) (unpublished) (holding that Heck did not bar Section 1983 claim where charges were dismissed against plaintiff for possession of stolen property).

Moreover, Heck applies in cases where there is no actual conviction or judgment. Covington v. City of New York, 171 F.3d 117, 124 (2nd Cir. 1999). Federal case law

also requires proof that a termination of charges was in favor of plaintiff. Heck, 512 U.S. at 484; Snider v. Lee, 584 F.3d 193, 199 (4th Cir. 2009); Lambert v. Williams, 223 F.3d 257, 262 (N.C.App. 2000). A simple dismissal of charges is not a favorable outcome, which has been narrowly interpreted to encompass "only terminations that indicate that the accused is innocent." Elkins v. Broome, 328 F.Supp.2d 596, 599 (M.D.N.C. 2004) (internal citations omitted.) A Section 1983 claim is waived unless the person charged receives an acquittal at trial or an unqualified dismissal. Id. (citation omitted).

## VII. Discussion

The parties have identified three key issues in their pending motions which the court will address in order. The three issues are: (1) whether any or all of plaintiff's claims should be dismissed based upon her district court conviction in light of Myrick v. Cooley; (2) whether plaintiff has sufficiently developed her case under Monell v. New York City Dept. of Social Services; and (3) whether the Town of Stallings can escape liability under *respondeat superior* by admitting to an agency relationship with its officers.

### A. First Issue: State Court Conviction

With respect to the first issue, the parties disagree as to whether plaintiff's conviction for resist, delay, or obstructing an officer proves that probable cause existed to justify her arrest. Under North Carolina law, a conviction establishes, as a matter of law, the existence of probable cause and defeats both federal and state claims for false arrest or imprisonment, even if a plaintiff is ultimately acquitted in superior court. Myrick v. Cooley, N.C.App. 209, 214 (N.C.App. 1988). However, an arrest made in violation of the Fourth Amendment protection against unreasonable seizure of a person is actionable

under Section 1983.  Id., p. 212 (internal citations omitted).  Under Myrick, a plaintiff may show that the conviction was "procured by fraud or other unfair means" in order to preclude the finding of probable cause.  Id. at 214.

Defendants also cite Ninth Circuit case law for the proposition that an arrest with multiple charges is valid as long as probable cause exists for at least one of the charged offenses.  See Barry v. Fowler, 902 F.2d 770, 773 f.n.5 (9th Cir. 1990).  The Fourth Circuit has noted that "other courts have held that an officer must have probable cause for at least one charge for an arrest on multiple charges to withstand a Fourth Amendment challenge."  Gantt v. Whitaker, 57 F. App'x 141, 149 f.n. 7 (4th Cir. 2003) (unpublished).

Plaintiff attempts to parse the charges against her by explaining that she was first arrested based on the disorderly conduct charge, and then she was subsequently cited for resist, delay, or obstructing charge which she classifies as an "auxiliary charge."  Memo. in Opp., p. 6.  Plaintiff raises a somewhat novel argument, specifically that because she was acquitted of disorderly conduct, the subsequent charge and conviction of resisting arrest cannot stand.  However, there is considerable evidence on the videotape of probable cause to arrest plaintiff, including her obstreperous behavior toward the Officers. Furthermore, both charges appear to have been brought against plaintiff based on the same incident, and that, under Myrick, probable cause would still exist justifying her arrest even if her conviction is ultimately overturned.

With respect to the exceptions that would preclude a finding of probable cause under Myrick, plaintiff has provided no evidence that shows the conviction was obtained through fraud or other means.  The mere presence of police officers from the Officers' unit in the courtroom was neither proof of an undue or intimidating influence, nor does

the fact that plaintiff was arrested on her own property mean that a public disturbance did not occur. The record shows that plaintiff was yelling and refusing to comply with officers and created a disturbance during the evening hours in her neighborhood. Because the court finds that genuine issues of material fact remain, this issue is not yet ripe for summary judgment.

### B. Second Issue: Insufficient Discovery

Under the second issue identified by the parties, plaintiff alleges that she needs to develop additional facts pursuant to Fed.R.Civ.P. 56(d). Plaintiff specifically seeks the depositions of former Chief Plyler, Officer Weatherman, and the district court judge who convicted her for resisting arrest. Under Monell, two elements are required to properly plead and later establish employer or official capacity liability: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the employer is responsible for that violation. Monell v. New York City Dept. Of Social Services, 436 U.S. 658 (1978). In Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027 (1988), the appellate court held that any employer liability must be carefully controlled at three critical points: (1) identifying the specific policy or custom, (2) fairly attributing the policy and fault for its creation to the public employer, and (3) finding a necessary affirmative link between identified policy or custom and specific violation. Id., at 1389. Where the alleged constitutional deprivation is not an official act of the municipal employer, the only recovery lies against the officer in his or her individual capacity. Hughes v. Blankenship, 672 F.2d 403, 405-06 (4th Cir. 1982); Burt v. Abel, 585 F.2d 613, 617 n.9 (4th Cir. 1978). The doctrine of *respondeat superior*, however, is generally inapplicable to Section 1983 suits, see Monell, 436 U.S. at 691, but North Carolina law does not bar a *respondeat superior* claim to tort claims against

governmental units.  See Morton v. Town of Wagram, 2001 WL 68232, *4 (M.D.N.C. 2001) (unpublished).

Thus, under Monell, plaintiff must show that the Town has a policy, practice, or custom which created a violation of plaintiff's rights.  With respect to plaintiff's request to depose the former Chief and Officer Weatherman, plaintiff's counsel described additional information that it had obtained about the Officer Weatherman's employment history and application process during the motion hearing and indicated that more information could be relevant to plaintiff's claim.

Thus, the court again finds that the evidence produced thus far does not allow either party to prevail as to this issue.  The Town has provided only limited information thus far as to its hiring process, background checks, and to Officer Weatherman's disciplinary record, all of which would be necessary in determining any liability on behalf of the Town.  Plaintiff's request to depose a judge, however, will be denied so as to preserve and not disrupt the judicial process.  See U.S. v. Morgan, 313 U.S. 409, 422 (1941).

### C.  Third Issue: *Respondeat Superior*

The third issue, whether the Town may prevail as to any of plaintiff's claims by admitting *respondeat superior* liability, is also not ripe for adjudication.  "Under North Carolina law, an employer may be held liable for the tortious acts of its employees, based on either a theory of (1) *respondeat superior* if the employee was acting in the scope of his or her employment, or (2) negligent supervision if, 'prior to the [tortious] act, the employer knew or had reason to know of the employee's incompetency' even if 'the act of the employee either was not, or may not have been, within the scope of his employment.'

-13-

McFadyen v. Duke University, 786 F.Supp.2d 887, 1002 (M.D.N.C., 2011), citing Hogan v. Forsyth Country Club. Co., 79 N.C.App. 483, 495-96. The plaintiff has the burden to prove that the employer "knew or had reason to know of the employee's incompetency" before the employee committed a tort and injured plaintiff. McFadyen, 786 F.Supp.2d 887, 1005. While the case is not the "complicated civil rights action" that plaintiff claims it to be, the Town does not escape liability simply by its acknowledgment of the existence of an agency relationship with its police officers. Plaintiff's actions prior to her arrest were, at a minimum, disruptive of what should have been a routine disturbance call. While not all officers may have determined that an arrest was necessary, the facts of the arrest are not so one-sided that any of the parties may prevail at this stage.

## VIII. Conclusion

Thus, having carefully considered the motions and arguments set forth at the motion hearing, defendants' Motion for Partial Summary Judgment is denied as premature. Having found that material questions of fact remain and that this matter is not yet ripe for summary judgment, the court turns to the potential impact of Heck. The court is not wholly satisfied that Heck and its progeny have been fully considered by the parties. In a case originating in this district and decided soon after the hearing of the instant motion, the Fourth Circuit addressed the impact of Heck in substantially similar circumstances. See Bishop, supra. After taking additional discovery, the parties should be prepared to fully explore Heck, as it may apply in this case. While the court fully understands that an appeal from state district court to superior court results in trial *de novo*, the court would be interested in any federal decisions discussing the impact under

Heck.

As this matter continues, the court respectfully suggests that the parties closely examine the viability of plaintiff's claims, including the extent of her injuries and expectation of damages, and continue to work toward an amicable settlement.

**ORDER**

**IT IS THEREFORE ORDERED** that defendants' Motion for Partial Summary Judgment (#16) is **DENIED** without prejudice, and the Clerk of Court is respectfully instructed to calendar this action for trial.

Signed: July 6, 2012

Max O. Cogburn Jr.
United States District Judge